IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., a Delaware Corporation, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Case No. _____ |
| EXPEDIA, INC., a Washington Corporation, | ) ) | |
| *Defendant.* | ) ) ) | |

## COMPLAINT

Plaintiff American Airlines, Inc. ("American"), through its attorneys, brings this action to enjoin Defendant Expedia, Inc.'s ("Expedia's") infringement of American's AADVANTAGE trademarks, and to remedy Expedia's breach of its contractual promise not to harm the AADVANTAGE Marks. American seeks preliminary and permanent injunctive relief and all other remedies available under the laws of the United States and the State of Texas, and respectfully alleges as follows:

## NATURE OF ACTION

1. This is an action for breach of contract and trademark infringement, unfair competition and false designation of origin, and trademark dilution pursuant to the Lanham Act.

2. In recent months, Expedia announced a new program that it calls "Add On Advantage," using the logos:



The Add On Advantage logos and marks are confusingly similar to American's own AADVANTAGE marks, such as the exemplary version below, on their face and in the context of the travel and discount services that American has offered under its AAdvantage program since the early 1980s.



Despite requests to stop, Expedia is widely promoting this confusing mark, causing irreparable harm to the goodwill and reputation of American and its trademarks.  As a result, American has been forced to protect its interests by seeking relief in this Court.

## PARTIES

3.     American is a Delaware corporation with its principal place of business at 4333 Amon Carter Boulevard, Fort Worth, Texas 76155.

4.     Expedia is a Washington corporation with a principal place of business at 333 108th Avenue NE, Bellevue, Washington 98001.

## JURISDICTION AND VENUE

5.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity (*i.e.*, the parties are citizens and residents of different states) and the amount in controversy exceeds $75,000.00, exclusive of costs and interest.

6.     The Court has subject matter jurisdiction over American's trademark-related claims pursuant to 28 U.S.C. §§ 1331, 1337, and 1338(a) and (b) and 15 U.S.C. §§ 1114, 1116, 1121, and 1125(a).

2

7.      The Court has supplemental subject matter jurisdiction over American's state law claims under 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367, because the claims are joined with substantial and related federal claims, form a part of the same case or controversy, and derive from a common nucleus of operative fact under Article III of the United States Constitution.

8.      Expedia has offered for sale and sold its services to consumers in Texas through its Expedia.com website.  Expedia regularly transacts business within the state of Texas, regularly and purposefully directs its business activities toward Texas and its residents, and derives substantial revenue from services used or consumed in Texas.

9.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial portion of the events that give rise to this action occurred within this District.  Venue is also proper in this District under 28 U.S.C. § 1391 because Expedia is subject to the Court's personal jurisdiction.  Further, venue is proper and jurisdiction exists under the parties' contracts, which provide that civil suits or actions may be brought in this District, the parties submit to the Court's jurisdiction, and the parties waive any objections to jurisdiction or venue.

## FACTUAL BACKGROUND

## AMERICAN'S AADVANTAGE MARKS

10.      American is the largest air carrier in the world and enjoys a reputation in the United States and internationally as a premier airline for business and leisure travelers. American and its affiliates serve over 350 destinations in over fifty countries, with nearly 7,000 daily flights.

11.      During its more than 90-year history, American has developed global name-recognition and goodwill and become a household name. A significant component of American's success has been its investment in its brand and intellectual property. For decades, it has used

and continues to use the trade name "American Airlines" and numerous trademarks and service marks such as AA and AMERICAN AIRLINES, both alone and in connection with other words and designs. American's brands, trade names, and other intellectual property are the result of significant investment and are worth billions of dollars.

12.    American has introduced numerous innovations in the travel industry over the years, from the first computer system for automating reservations to the first global alliance of air carriers, to permit interline ticketing between member airlines and enhanced benefits for American's customers. Consistent with its role as a long-time innovator in the industry, American was one of the first companies to launch a loyalty program, rewarding frequent travelers with special privileges, such as free upgrades, discounted tickets, and frequent-flyer miles. American launched its loyalty program, named AADVANTAGE, in 1981. It quickly became a model for the loyalty programs of American's competitors and has been for over three decades:



American's AAdvantage program is the largest loyalty program in the world.  American has developed its distinctive AADVANTAGE brand and program over the past thirty-seven years.

The AAdvantage program has evolved over the years into a much broader loyalty program to now provide a myriad of ways to "earn" and "burn" AAdvantage miles, fom co-branded credit cards to hotel stays to purchases of retail products.  AAdvantage member travel-related benefits now include priority boarding, expedited security, discounted Admirals Club memberships, free checked baggage, seat choice, complimentary standby and flight changes, among many other benefits.

13.     Over the past thirty-seven years American has used the AADVANTAGE marks, both alone and in combination with other words and designs (the "AADVANTAGE Marks"), in connection with loyalty programs, discount programs, incentive award programs, transportation services, and travel related goods and services, in interstate commerce.

14.     Beginning in 1983, to protect its significant investment in the AAdvantage loyalty program, American registered the AADVANTAGE Marks in the United States Patent and Trademark Office ("USPTO") on the Principle Register. American also registered the AADVANTAGE Marks in many other countries throughout the world.

15.     American's registered AADVANTAGE Marks include the following:

| Mark/Name | Reg. No. | Registration Date | Services |
|---|---|---|---|
| AADVANTAGE and Design | RN: 15228737 | February 22, 1983 | (Int'l Class 35)<br>Providing a program of bonus flights for frequent travelers |
| AADVANTAGE and Design | RN: 2006172 | October 8, 1996 | (Int'l Class 35)<br>promoting travel services, credit card use, long-distance service car rentals, and<br>hotel accommodations through the administration of award programs |
| AADVANTAGE | RN: 2187483 | September 8, 1998 | (Int'l Class: 35)<br>promoting the goods and services of others by means of an incentive |

| Mark/Name | Reg. No. | Registration Date | Services |
|---|---|---|---|
| | | | awards programs, whereby purchase points are awarded for purchase made from vendor subscribers, which can then be redeemed for merchandise and travel<br><br>(Int'l Class: 39) providing air transportation services featuring a program of bonus flights for frequent travelers |
| AADVANTAGE EXECUTIVE PLATINUM | RN: 2247386 | May 25, 1999 | (Int'l Class: 39) transportation of passengers by air, namely, providing a program of bonus flights for frequent travelers |
| AADVANTAGE EXECUTIVE PLATINUM and Design | RN: 2444458 | April 17, 2001 | (Int'l Class: 39) transportation of passengers by air, namely, providing a program of bonus flights for frequent travelers |
| AADVANTAGE GOLD and Design | RN: 2001368 | September 17, 1996 | (Int'l Class: 39) transportation of passengers by air, namely, providing a program of bonus flights for frequent travelers |
| AADVANTAGE GOLD | RN: 3789842 | May 18, 2010 | (Int'l Class: 39) transportation of passengers by air, namely, providing a program of bonus flights for frequent travelers |
| AADVANTAGE PLATINUM and Design | RN: 1788496 | August 17, 1993 | (Int'l Class: 39) transportation of passengers by air, namely, providing a program of bonus flights for frequent travelers |
| AADVANTAGE PLATINUM | RN: 3789843 | May 18, 2010 | (Int'l Class: 39) transportation of passengers by air, namely, providing a program of bonus flights for frequent travelers |
| AADVANTAGE | RN: 4897372 | February 9, 2016 | (Services covered by the registration include the following in Int'l Class 39) promoting the goods and services of others by means of loyalty program, discount program, and an incentive |

| Mark/Name | Reg. No. | Registration Date | Services |
|---|---|---|---|
| | | | awards program whereby purchase points are earned or awarded for purchases made from vendor subscribers or travel conducted by member subscribers which can then be redeemed for merchandise and travel<br><br>(Int'l Class 39)<br>air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services, namely, coordinating travel arrangements for individuals, providing air transportation reservation services, providing cruise reservation services, and providing vacation reservation services, namely, coordinating vacation travel arrangements for individuals, by means of an incentive rewards program<br><br>(Int'l Class 43)<br>Providing food and beverage services for others and hotel accommodation services for others by means of an incentive rewards program, namely, providing hotel accommodation reservation services for others and providing restaurant reservation services for others |

16.     In addition to its registered rights, American has strong common-law rights in the AADVANTAGE Marks by virtue of extensive use and promotion in commerce.

17.     The AADVANTAGE Marks serve as unique and famous source identifiers for American's loyalty program and various travel services.

18.     American has invested millions of dollars in worldwide advertising and marketing building the fame, reputation, and goodwill of the AADVANTAGE Marks. American advertises

through a variety of media, including television, radio, newspapers, magazines and direct mail, across the country.

19.     American also promotes its products and services on the Internet, via its own websites and through advertising on the websites of third parties.

20.     The AADVANTAGE Marks are distinctive designations of the source of origin of American's services.

21.     The AADVANTAGE Marks are uniquely associated with American and its high-quality goods and services. These marks are assets of incalculable value as symbols of American, its quality goods and services, and its goodwill.

22.     The AADVANTAGE Marks are "famous" within the meaning of the dilution provisions of the Lanham Act, 15 U.S.C. § 1125(c). The AADVANTAGE Marks became famous before Expedia's infringement began.

23.     As a result of American's extensive advertising and promotional efforts and its continuous use of the AADVANTAGE Marks, the AADVANTAGE Marks are famous, distinctive and widely recognized by the general consuming public of the United States as a designation of source of the involved goods and services.

**The Governing Travel Agency Agreements
and Agency Program Agreement**

24.     The Airlines Reporting Corporation ("ARC") accredits U.S. travel agencies to sell airline tickets, and the International Airline Transport Association ("IATA") accredits travel agencies outside the U.S.. On information and belief, Expedia is both an ARC-and an IATA-accredited travel agency.

25.     Before permitting travel agencies, including Expedia, to sell tickets for American flights, American requires travel agencies to agree to its Addenda to the ARC and/or IATA travel

agency agreements, known collectively as the Governing Travel Agency Agreements (the Governing Travel Agency Agreements, with addendum, are collectively referred to herein as "GTAA"). Under the GTAA, American granted Expedia limited permission to use "the American Marks", specifically listing AADVANTAGE among the other marks.

26.     Under the GTAA, Expedia agreed to not harm, challenge American's ownership of, or in any way contest or deny the validity of, or the right or title of American in or to, the American Marks.

27.     Under the GTAA, Expedia also agreed to not use any intellectual property that is confusingly similar to the American Marks, including the AADVANTAGE Marks. Expedia further acknowledged under the GTAA that:

> any breach of the obligations set out in these instructions or the Agreement by Agent could cause irreparable injury and that monetary damages would not be an adequate remedy for such breach. In the event of a breach or threatened breach of any of the provisions of these instructions or the Agreement, American will, to the extent permitted under applicable law, be entitled to seek injunctive relief in any court of competent jurisdiction restraining [Expedia] from breaching the terms hereof without requirement of a bond or notice and [Expedia] agrees not to object or defend against such action on the basis that monetary damages would provide an adequate remedy.

28.     In addition to its obligations under the GTAA, Expedia and American signed the Agency Program Agreement, effective as of August 1, 2014 (the Agency Program Agreement, with amendments, are collectively referred to as "APA"), which authorizes Expedia to distribute fares for American flights.

29.     Under the APA, Expedia specifically acknowledged that it is bound by the intellectual property and other provisions of the GTAA.

30.     The APA also states that Expedia agrees that it will not purchase, use, or register any domain names, keywords or search terms that are identical or confusingly similar to or contain any of the American Marks, which include the AADVANTAGE Marks.

31.     Expedia features, promotes and sells tickets for American flights. Expedia allows customers to enter their AAdvantage membership number when purchasing American tickets through Expedia, which allows customers to earn AAdvantage rewards for purchases made on Expedia.

### EXPEDIA'S BREACH OF THE GTAA, AGENCY PROGRAM AGREEMENT, AND INFRINGEMENT OF THE AADVANTAGE MARKS

32.     On June 14, 2018, Expedia filed two U.S. Trademark Applications:

 

In each of these trademark applications, Expedia declared that it intended to use the above marks in connection with travel-related services in the same international classifications – Classes 39 and 43 – as the AADVANTAGE Marks.

33.     In recent months, and without waiting for its trademark applications to be approved, Expedia began using the above designs and the phrase "Add On Advantage" (collectively, the "Add On Advantage Marks") in interstate commerce by using them to advertise, promote, and sell travel-related services on its website.

34.     Expedia has begun prominently featuring the Add On Advantage Marks on its website, including on the home page of its website. At the time of filing this Complaint, Expedia is featuring the Add On Advantage Marks in at least four separate locations on its home page. In all four instances, Expedia placed the "A" from "Add On" right next to the "A" from Advantage:

 

35.     The  Add  On  Advantage  Marks  are  confusingly  similar  to  American's AADVANTAGE marks on their face. Expedia is increasing that confusion by using the Add On Advantage  Marks  as  a  discount  program  for  the  bundling  airline  tickets,  car  rental  services and/or hotel services – the same kind of services that American offers under its AAdvantage program.



36.     Through Expedia's Add On Advantage program, customers can book tickets on American  flights  and  can  bundle  those  flights  with  other  purchases.  These  customers  may encounter American's own AADVANTAGE marks, may be asked to provide their AAdvantage number,  and  may  earn  AAdvantage  reward  miles  in  the  same  session  where  they  encounter

11

Expedia's Add On Advantage marks. This creates a great likelihood that a consumer may be confused as to the source, sponsorship, or affiliation of the Add On Advantage program.

37.     Expedia is even *recommending* American flights in connection with its Add On Advantage mark:



38.     Other consumers who encounter Expedia's Add On Advantage program will purchase tickets from American's direct competitors. By associating its Add On Advantage marks with other airlines, Expedia is damaging the effectiveness and uniqueness of the AADVANTAGE brand. This will create further confusion in consumers who previously associated the AADVANTAGE Marks with American, but who may question that association in view of Expedia's use of Add On Advantage marks with other airlines.

39.     Expedia is also breaching its obligations under the GTAA and APA relating to the AADVANTAGE Marks, which prohibit Expedia from using or registering keywords or search terms that are identical or confusingly similar to the American Marks, including the AADVANTAGE Marks. As part of its Add On Advantage marketing campaign, Expedia is registering and/or using keywords and search terms that are confusingly similar or contain the American Marks. In social media, including Twitter and Facebook, Expedia is using and

promoting the Twitter keyword or search term (called a hashtag) #AddOnAdvantage, both directly and through third parties:



The #AddOnAdvantage hashtag is confusingly similar to the American Marks

40.     In addition to breaching the GTAA and APA, Expedia's conduct is likely to cause confusion, to cause mistake, or to deceive the public and the trade into believing that Expedia or its services offered under the Add On Advantage Marks originate with or are related to American, or are licensed by, sponsored or approved by, connected with, or associated or affiliated with American, when this is not the case.

41.     Moreover, Expedia's conduct in using and seeking to register the Add On Advantage Marks has caused and will continue to cause harm to the AADVANTAGE Marks. Its conduct is willful, in that American repeatedly has notified Expedia of its contractual and statutory duties not to use the confusingly similar Add On Advantage Marks, to no avail.

**COUNT I**
**BREACH OF THE GTAA**

42.     American repeats and alleges each of the allegations contained in the preceding paragraphs as if fully stated herein.

43.     American and Expedia entered into the GTAA, as described above.

44.     The GTAA is a valid and enforceable agreement, binding on Expedia.

45.     As authorized by the GTAA, Expedia has sold tickets for American flights on its website Expedia.com.

46.     Expedia breached the GTAA by using and seeking registration of the Add On Advantage Marks in connection with travel services, which have harmed and continue to cause harm to, and are confusingly similar to, the AADVANTAGE Marks. Expedia has further breached the GTAA by using or registering keywords or search terms that are identical or confusingly similar to the American Marks.

47.     Expedia's acts have caused and, unless and until such acts are enjoined by this Court, will continue to cause, great and irreparable injury to American.

48.     American has no adequate remedy at law for the wrongful acts of Expedia in connection with the AADVANTAGE Marks.

49.     American has sustained injury, damage, and loss based on Expedia's actions.

## COUNT II
## BREACH OF THE APA

50.     American repeats and alleges each of the allegations contained in the preceding paragraphs as if fully stated herein.

51.     American and Expedia entered into the APA, as described above.

52.     The APA is a valid and enforceable agreement.

53.     Expedia has breached the APA by using the AADVANTAGE Marks in connection with travel services and failing to comply with provisions of the GTAA. Expedia has further breached the APA by using or registering keywords or search terms that are identical or confusingly similar to the American Marks.

54.     Expedia's acts have caused and, unless and until such acts are enjoined by this Court, will continue to cause, great and irreparable injury to American.

55.    American has no adequate remedy at law for the wrongful acts of Expedia in connection with the AADVANTAGE Marks.

56.    American has sustained injury, damage, and loss based on Expedia's actions.

## COUNT III
## FEDERAL TRADEMARK INFRINGEMENT
## (15 U.S.C. §1114(1))

57.    American repeats and realleges each of the allegations contained in the preceding paragraphs as if fully stated herein.

58.    American's federally registered AADVANTAGE Marks are inherently distinctive and continue to acquire further substantial distinctiveness and goodwill in the marketplace through American's use of those marks in commerce. As a result of American's widespread and continuous use of the AADVANTAGE Marks, the AADVANTAGE Marks have become associated in the minds of the relevant purchasing public with American. The reputation and goodwill that American has built-up in its AADVANTAGE Marks is of great value to American.

59.    Expedia's actions in using and seeking to register the Add On Advantage Marks, as described above, are likely to cause confusion with, or to cause mistake or deceive consumers as to the origin, sponsorship or approval of, Expedia's services and related commercial activities, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

60.    Expedia's acts have caused and, unless and until such acts are enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great and irreparable injury to American.

61.    American has no adequate remedy at law.

62.    By virtue of its acts, Expedia has violated Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(l).

## COUNT IV
## FEDERAL UNFAIR COMPETITION
### (Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

63.     American repeats and realleges each of the allegations contained in the preceding paragraphs as if fully stated herein.

64.     Expedia's actions, as described above, constitute use of a false designation of origin, or a false representation, which wrongfully and falsely designates the origin of Expedia's services and related commercial activities as originating from or being approved by American, and thereby constitutes a false description or representation used in interstate commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

65.     Expedia's acts have caused and, unless and until such acts are enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great and irreparable injury to American.

66.     American has no adequate remedy at law.

67.     By virtue of its acts, Expedia has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT V
## FEDERAL TRADEMARK DILUTION
### (Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))

68.     American repeats and realleges each of the allegations contained in the preceding paragraphs as if fully stated herein.

69.     The AADVANTAGE Marks are famous and highly recognized by the general consuming public and were famous and highly recognized by the general consuming public before Expedia's first use of its mark and before the actions complained of herein.

70.     Expedia's actions, as described above, dilute and are likely to continue to dilute the distinctiveness of the AADVANTAGE Marks.

71.     Expedia's acts have caused and, unless and until such acts are enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great and irreparable injury to American.

72.     American has no adequate remedy at law.

73.     By virtue of its acts, Expedia has violated the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

## PRELIMINARY INJUNCTION

74.     American repeats and realleges each of the allegations contained in the preceding paragraphs as if fully stated herein.

75.     Upon proper notice and hearing under Fed. R. Civ. P. 65, and after targeted expedited discovery, American requests this Court to issue a preliminary injunction prohibiting Expedia's unlawful actions and misuse of American's trademarks, reputation, and goodwill, pending trial and final judgment.

76.     As detailed above, American has a strong likelihood of prevailing on its contractual and federal trademark claims. American registered the AADVANTAGE Marks over thirty years ago. During the subsequent three decades, the AADVANTAGE Marks have become a famous identifier for American that is immediately recognized among the travelling public. Expedia contracted not to harm, challenge American's ownership of, or in any way contest or deny the validity of the American Marks, including AADVANTAGE. Expedia also agreed not to use any intellectual property that is confusingly similar to the AADVANTAGE Marks. Yet Expedia's Add On Advantage targets the same markets—sometimes even the same webpage—as

American's registered AADVANTAGE Marks. This violates federal trademark law, creates confusion in the marketplace, and lays waste to American's contractual protections.

77.     Moreover, Expedia's aggressive marketing blitz for the competing mark underscores why an injunction is necessary. In just a few short months since the launch of its Add On Advantage program, Expedia has featured the infringing Add On Advantage Marks on its homepage, through a nationwide television campaign, in official launch parties at various international locations, and with aggressive online video advertising. For example, one of Expedia's Add On Advantage advertisements has already been seen by over 35 million online viewers.

78.     The damage to American from this global infringement is, in important respects, impossible to quantify or repair. There is no way to calculate, for instance, how much confusion Expedia has already caused among millions of travelers, nor is there a way that American can clear up their misconceptions. Expedia also entered contracts with American that agreed the infringement or threatened infringement of the American Marks would entitle American to injunctive relief, and that Expedia would not object to an injunction on grounds that money would repair the harm.

79.     The balance of equities overwhelmingly favors American, especially given Expedia's contractual commitments and American's high likelihood of success on the merits. The injury to reputation and loss of goodwill to American and the confusion to the public caused by Expedia's actions outweighs any possible inconvenience to Expedia of not using the competing marks until the Court reaches a final decision on the merits.

80.     Finally, a preliminary injunction is in the public interest. Injunctive relief would hold sophisticated parties to their contracts, protect decades of American's investment in registered trademarks, and prevent confusion among millions of consumers around the world.

## PRAYER FOR RELIEF

Plaintiff prays for the following relief:

A.     That this Court find that Expedia has unlawfully, willfully, and without authorization infringed upon Plaintiff's AADVANTAGE Marks, and engaged in unfair competition, both in violation of the Lanham Act, 15 U.S.C. § 1125, *et seq.*

B.     Ordering that Expedia, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, by, through or under it be preliminarily and permanently enjoined from:

1.     using the Add On Advantage Marks and engaging in any other activity that infringes the AADVANTAGE Marks;

2.     engaging in any activity constituting unfair competition with Plaintiff;

3.     engaging in any activity that is likely to dilute the distinctiveness of the AADVANTAGE Marks;

4.     engaging in any activity that is in violation of the APA or GTAA;

5.     registering or applying to register the Add On Advantage Marks and/or any other trademark, service mark, domain name or other source identifier or symbol of origin consisting of or incorporating the AADVANTAGE Marks or any other mark that infringes or is likely to be confused with the AADVANTAGE Marks, or any goods or services of American;

C.      That Expedia withdraw its trademark applications for all Add On Advantage Marks and, pursuant to 15 U. S. C. § 1116, that they be directed to file with the Court and serve upon Plaintiff within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Expedia has complied with this requirement.

D.      That American be awarded monetary relief in an amount to be fixed by the Court in its discretion as just, including:

      1.      All profits received by Expedia from sales and revenues of any kind made as a result of their infringing and diluting actions;

      2.      All damages sustained by American as a result of Expedia's acts of infringement, unfair competition, and dilution including but not limited to ascertainable damages, costs, and attorney fees, including punitive damages;

E.      That American shall have such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Dated: October 16, 2018

/s/Lars L. Berg
Dee J. Kelly, Jr.
State Bar No. 11217250
Lars L. Berg
State Bar No. 00787072
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Tel.: (817) 332-2500
Fax: (817) 878-9280
dee.kelly@kellyhart.com
lars.berg@kellyhart.com

R. Paul Yetter
State Bar. No. 22154200
Robert K. Ellis
State Bar No. 24076367
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
Tel: (713) 632-8000
Fax: (713) 632-8002
pyetter@yettercoleman.com
rellis@yettercoleman.com

Nathan J. Muyskens, Esq.
*Pro Hac Vice* Admission to be Sought
GREENBERG TRAURIG, LLP
2101 L St. NW, Suite 1000
Washington, DC 20037
Tel: (202) 331-3164
muyskensn@gtlaw.com

ATTORNEYS FOR PLAINTIFF
AMERICAN AIRLINES, INC.