

CLERK OF DISTRICT COURT
NORTHERN DIST. OF TX
FORT WORTH DIVISION
FILED

2018 NOV 15 PM 2: 51

DEPUTY CLERK_____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| AMERICAN AIRLINES, INC., a Delaware Corporation, | ) | |
|  | ) | |
| *Plaintiff,* | ) | Case No. 4:18-cv-00850-A |
|  | ) | |
| v. | ) | |
|  | ) | |
| EXPEDIA, INC. a Washington Corporation, | ) | |
|  | ) | |
| *Defendant.* | ) | |
|  | ) | |

## PLAINTIFF AMERICAN AIRLINES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................1

II.    STATEMENT OF FACTS .............................................................................4

    A.    American and the AAdvantage Marks ...............................................4
    B.    The Governing Travel Agency Agreements and Agency Program
        Agreement ...........................................................................................7
    C.    Expedia's Breach of the GTAA and Agency Program Agreement, and
        Infringement of the AAdvantage Marks.............................................8

III.   AMERICAN IS ENTITLED TO A PRELIMINARY INJUNCTION.............................11

    A.    Legal Standards for Preliminary Injunctive Relief.............................11
    B.    American is Likely to Succeed on Breach of Contract and Its Federal
        Trademark Claims .............................................................................12

        1.    Breach of Contract.................................................................12
        2.    Trademark Infringement.........................................................14

            a.    The AAdvantage Marks are valid and protectable marks. ...........14
            b.    Expedia's use of the infringing Add-On Advantage Marks
                is likely to cause confusion............................................................16

                (i)    Strength of the American's marks .....................................16
                (ii)   Similarity of the marks .....................................................17
                (iii)  American and Expedia provide closely-related
                      services. ............................................................................18
                (iv)  Outlet and purchaser identity.............................................19
                (v)   Advertising and media similarity .......................................19
                 (vi)  Expedia's intent .................................................................19
                (vii) Actual confusion................................................................21
                (viii) Degree of consumer care .................................................21

    C.    There is No Adequate Remedy at Law and American is Likely to Suffer
        Irreparable Harm in the Absence of Preliminary Injunctive Relief......................22
    D.    The Balancing of Harms Weighs in Favor of American. ......................................23
    E.    Issuance of a Preliminary Injunction is in the Public Interest. ..............................24

IV.   CONCLUSION ..........................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*ADT, LLC v. Capital Connect, Inc.*,
   145 F. Supp. 3d 671 (N.D. Tex. 2015) ................................................................................24

*Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*,
   2013 WL 6839815 (N.D. Ill. Dec. 27, 2013).......................................................................15

*Am. Rice, Inc. v. Producers Rice Mill, Inc.*,
   518 F.3d 321 (5th Cir. 2008) .............................................................................................16

*Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co*,
   438 F. Supp. 2d 653 (E.D. La. 2006)................................................................................16

*Dallas Cowboys Football Club, Ltd., v. Am.'s Team Props.*,
   616 F. Supp. 2d 622 (N.D. Tex. 2009)........................................................................16, 17

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
   710 F.3d 579 (5th Cir. 2013) .............................................................................................11

*Elvis Presley Enters., Inc. v. Capece*,
   141 F.3d 188 (5th Cir. 1998) ........................................................................................17, 20

*Equibrand Corp. v. Reinsman Equestrian Prods.*,
   2007 U.S. Dist. LEXIS 36229 (N.D. Tex. May 17, 2007)
   ................................................................................................................14, 17, 23, 24

*Exxon Corp. v. Texas Motor Exch.*,
   628 F.2d. 500 (5th Cir. 1980) ......................................................................................18, 19, 20

*Streamline Prod. Sys. v. Streamline Mfg.*,
   No. 16-20046, 2017 U.S. App. LEXIS 6496 (5th Cir. 2017)................................................19

*Terex Corp. v. Cubex, Ltd.*,
   06-cv-1639, 2006 U.S. Dist. LEXIS 88863 (N.D. Tex. Dec. 7, 2006)....................................12

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763 (1992) .............................................................................................................15

*Vogue Tyre & Rubber Co. v. Rivas*,
   17-cv-3198, 2018 U.S. Dist. LEXIS 136293 (N.D. Tex., July 18, 2018) ...............................20

*Westchester Media v. PRL USA Holdings, Inc.*,
   214 F.3d 658 (5th Cir. 2000) .............................................................................................16

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.*,
   576 F.3d 211 (5th Cir. 2009) ........................................................................................19, 20

**Federal Statutes**

15 U.S.C. § 1114(1) ...................................................................................................14

15 U.S.C. §1115(a) .....................................................................................................14

15 U.S.C. § 1125(a) ....................................................................................................14

15 U.S.C. § 1127 .........................................................................................................15

**Other Authorities**

"Add On Advantage," (https://www.expedia.com/addonadvantage, last accessed
    11/13/2018) ...........................................................................................................3

"Expedia Unlocks New Way to Save on Travel,"
    (https://newsroom.expedia.com/2018-06-13-Expedia-Unlocks-New-Way-to-
    Save-on-Travel, last accessed 11/13/2018, emphasis added) ...................................3

"How to find a great price on your next vacation,"
    (https://viewfinder.expedia.com/tips-trends/the-foolproof-guide-to-finding-
    great-vacation-deals/, last accessed 11/13/2018, emphasis added) ...........................2

"How to save money with the Expedia Add-On Advantage,"
    (https://viewfinder.expedia.com/tips-trends/7-ways-to-save-money-on-travel/,
    last accessed 11/13/2018, emphasis added) ..................................................2, 10

2 McCarthy on Trademarks and Unfair Competition §11:11 (4th ed.) .............................15

## I. INTRODUCTION

In 1981, American began using the highly-distinctive "AAdvantage" mark to identify its customer loyalty and frequent traveler program. Since that time, American has continuously used the AAdvantage mark, both alone and with other words and designs (collectively, the "AAdvantage Marks"). American now offers discount programs, incentive award programs, transportation services, and travel-related goods and services under the AAdvantage Marks. American has invested millions of dollars in marketing and promoting the goods and services it offers in association with the AAdvantage Marks. Additionally, American has obtained multiple federal trademark registrations for the AAdvantage Marks. Through American's efforts, the AAdvantage Marks have become unique and famous source identifiers for American's loyalty program and various travel services since their inception 37 years ago. As a result, American believes its AAdvantage Marks are the most valuable marks in the travel industry. An example of American's AAdvantage Mark is shown below:



Defendant Expedia, Inc. ("Expedia") has recently adopted a confusingly similar mark "Add-On Advantage" (the "Add-On Advantage Marks"), in an apparent attempt to trade off of the success of the AAdvantage Marks, as shown below:

### How to find a great price on your next vacation

Burned out, stressed out, time poor, or even just plain lazy—chances are, if you need a vacation the last thing you have the time to do is plan. Many of us just don't have the inclination to spend our hard-earned downtime searching for the best hotel deals. And the good news is, now you don't have to.

The Expedia Add-On Advantage is a foolproof way to make sure you're getting a good deal every time. It's the brand-new way to save on travel and the best part is you can leave the heavy lifting to the experts. All you need to do is book a flight, car or package to unlock discounts to hundreds of thousands of participating hotels all over the world.

(https://viewfinder.expedia.com/tips-trends/the-foolproof-guide-to-finding-great-vacation-deals/, last accessed 11/13/2018, emphasis added.)

Read on for some of Expedia's insider travel hacks for 2018:

1. **Our top tip: Use Expedia's Add-On Advantage**
2. **4 tips to save on airfare and hotel costs**
3. **3 tips on how to book a flight**

### How to save money with the Expedia Add-On Advantage

You can get discounted hotel rates when you add on to your existing trip. It's called Add-On Advantage, and it's exclusively for Expedia travelers. Begin by shopping for your flight tickets, rental car, activity or vacation package on Expedia.com. After you book, you'll instantly **unlock savings up to 43% off select hotels until the day of your trip**—giving you time to find just the right hotel.

(https://viewfinder.expedia.com/tips-trends/7-ways-to-save-money-on-travel/, last accessed 11/13/2018, emphasis added.)

## Expedia Unlocks New Way to Save on Travel
Expedia Add-On Advantage grants instant access to hotel discounts by booking a flight, car or package

BELLEVUE, Wash., June 13, 2018 /PRNewswire/ -- Today Expedia.com® announced the launch of the Add-On Advantage, the newest way for travelers to save. With the Expedia Add-On Advantage, travelers can now qualify for hotel discounts up to 43 percent off at any point before their trip by booking either a flight, car or package on Expedia.com.

(https://newsroom.expedia.com/2018-06-13-Expedia-Unlocks-New-Way-to-Save-on-Travel, last accessed 11/13/2018, emphasis added.)   When using "Add-On Advantage" in logo form, Expedia frequently even stacks the "A"s in "Add On" and "Advantage" next to each other – just like the AAdvantage Marks:



(https://www.expedia.com/addonadvantage, last accessed 11/13/2018.)

Unless enjoined, Expedia's ongoing infringement of the AAdvantage Marks will create confusion among consumers, will damage the value of the decades-old AAdvantage Marks, and will hinder American's ability to control its goodwill in the AAdvantage Marks and its reputation.   This has and will continue to cause irreparable harm to American.   Accordingly, American seeks preliminary injunctive relief to protect its trademarks from further irreparable harm and infringement, and to protect the public from ongoing confusion, pending a trial on the merits.

## II.   STATEMENT OF FACTS

### A.   American and the AAdvantage Marks

American is the largest air carrier in the world, serving over 350 destinations in over 50 countries, with nearly 7,000 daily flights. (Declaration of Cory Garner, Ex. 1, ¶ 3; Declaration of Bridget Blaise-Shamai, Ex. 2, ¶ 6.) Since 1934, American has developed and maintained a reputation as a premier airline for both business and leisure travelers alike. During that time, American has used and continues to operate under the trade name "American Airlines" and numerous trademark and service marks, such as "AA" and "American Airlines," both alone and with other words and designs. (Blaise-Shamai Decl., Ex. 2, ¶¶ 9, 12.) The trademarks have established global name-recognition and goodwill both in the United States and abroad.

In 1981, American Airlines became one of the world's first airlines to launch a loyalty program to reward frequent travelers with special privileges, such as free upgrades, discounted tickets, and frequent-flyer miles, under the name "AAdvantage." (Blaise-Shamai Decl., Ex. 2, ¶ 7.) The AAdvantage program quickly became a model airline loyalty program for American's competitors, and is currently the largest airline loyalty program in the world. (Id. at ¶ 1.) Over the past thirty-seven years, American has used the AAdvantage Marks in connection with loyalty programs, discount programs, incentive award programs, transportation services, and travel-related goods and services, in interstate commerce. (Id. at ¶¶ 7-12.)

American has invested tens of millions of dollars in worldwide advertising and marketing of the AAdvantage Marks through the Internet, television, radio, newspapers, magazines and direct mail campaigns. (Blaise-Shamai Decl., Ex. 2, ¶ 13.) Through these actions, American has developed strong common-law rights in the distinctive AAdvantage Marks, and has built the fame, reputation and goodwill of these marks. Moreover, American has protected its AAdvantage Marks through registration in the United States Patent and Trademark Office

4

("USPTO") on the Principal Register, and in many other countries around the world. (Blaise-Shamai Decl., Ex. 2, ¶ 12.) American's Registered AAdvantage Marks include the following:

| Mark Name | Reg. No. | Registration Date | Machine |
|-----------|----------|-------------------|---------|
| AAdvantage and Design | 1228737 | February 22, 1983 | (Int'l Class 35)<br>Providing a program of bonus flights for frequent travelers |
| AAdvantage and Design | 2006172 | October 8, 1996 | (Int'l Class 35)<br>Promoting travel services, credit card use, long-distance service car rentals, and<br>hotel accommodations through the administration of award programs |
| AAdvantage | 2187483 | September 8, 1998 | (Int'l Class: 35)<br>Promoting the goods and services of others by means of an incentive awards programs, whereby purchase points are awarded for purchase made from vendor subscribers, which can then be redeemed for merchandise and travel<br><br>(Int'l Class: 39)<br>Providing air transportation services featuring a program of bonus flights for frequent travelers |
| AAdvantage EXECUTIVE PLATINUM | 2247386 | May 25, 1999 | (Int'l Class: 39)<br>Transportation of passengers by air, namely, providing a program of bonus flights for frequent travelers |
| AAdvantage EXECUTIVE PLATINUM and Design | 2444458 | April 17, 2001 | (Int'l Class: 39)<br>Transportation of passengers by air, namely, providing a program of bonus flights for frequent travelers |
| AAdvantage GOLD and Design | 2001368 | September 17, 1996 | (Int'l Class: 39)<br>Transportation of passengers by air, namely, providing a program of bonus flights for frequent travelers |
| AAdvantage GOLD | 3789842 | May 18, 2010 | (Int'l Class: 39)<br>Transportation of passengers by air, |

| | | | |
|---|---|---|---|
| | | | namely, providing a program of bonus flights for frequent travelers |
| AAdvantage PLATINUM and Design | 1788496 | August 17, 1993 | (Int'l Class: 39) Transportation of passengers by air, namely, providing a program of bonus flights for frequent travelers |
| AAdvantage PLATINUM | 3789843 | May 18, 2010 | (Int'l Class: 39) Transportation of passengers by air, namely, providing a program of bonus flights for frequent travelers |
| AAdvantage | 4897372 | February 9, 2016 | (Services covered by the registration include the following in Int'l Class 39) Promoting the goods and services of others by means of loyalty program, discount program, and an incentive awards program whereby purchase points are earned or awarded for purchases made from vendor subscribers or travel conducted by member subscribers which can then be redeemed for merchandise and travel<br><br>(Int'l Class 39) Air transport of passengers, cargo, and freight; providing travel agency services, namely, providing travel reservation services, namely, coordinating travel arrangements for individuals, providing air transportation reservation services, providing cruise reservation services, and providing vacation reservation services, namely, coordinating vacation travel arrangements for individuals, by means of an incentive rewards program<br><br>(Int'l Class 43) Providing food and beverage services for others and hotel accommodation services for others by means of an incentive rewards program, namely, |

6

| | | | |
|---|---|---|---|
| | | | providing hotel accommodation reservation services for others and providing restaurant reservation services for others |

(Declaration of Lars L. Berg, Ex. 3.)

### B. The Governing Travel Agency Agreements and Agency Program Agreement

American sells its products directly to consumers. In addition to directly selling tickets, American also authorizes travel agencies in the U.S. and abroad to sell airlines tickets. (Garner Decl., Ex. 1, ¶¶ 4-12.) The Airlines Reporting Corporation ("ARC"), accredits U.S. travel agencies to sell airline tickets, while the International Airline Transport Association ("IATA") accredits travel agencies outside the U.S. Expedia is an ARC- and IATA-accredited travel agency. (Id. at ¶ 5.) Before permitting Expedia to sell tickets for American flights, American also required Expedia to agree to American's addendum to the standard ARC agreement (the ARC agreement, with addendum, are collectively referred to as the Governing Travel Agency Agreement, or "GTAA"). (Id. at ¶ 7.) This agreement creates clear obligations with which Expedia must comply.

When Expedia agreed to the GTAA, it obtained limited permission to use "the American Marks" to sell tickets, specifically including AAdvantage among such marks. (Garner Decl., Ex. 1, ¶ 8.) Expedia also agreed to refrain from harming, challenging American's ownership of, or in any way contesting or denying the validity of, or the right or title of American in or to, the American Marks, or using any intellectual property that is confusingly similar to the American Marks, including the AAdvantage Marks. (Id.) Under the GTAA, Expedia also acknowledged:

> any breach of the obligations set out in these instructions or the Agreement by Agent could cause irreparable injury and that monetary damages would not be an

7

adequate remedy for such breach.  In the event of a breach or threatened breach of any of the provisions of these instructions or the Agreement, American will, to the extent permitted under applicable law, be entitled to seek injunctive relief in any court of competent jurisdiction restraining [Expedia] from breaching the terms hereof without requirement of a bond or notice and [Expedia] agrees not to object or defend against such action on the basis that monetary damages would provide an adequate remedy.

(Garner Decl., Ex. 1, ¶ 9.)

Expedia and American are also parties to the Agency Program Agreement, effective as of August 1, 2014, which provides authorization for Expedia to distribute fares for American flights.   (Id. at ¶ 10.)   The Agency Program Agreement, with amendments, is collectively referred to as the "APA."  (Garner Decl., Ex. 1, ¶ 10.)  By signing the APA, Expedia specifically acknowledged that it is bound by the intellectual property and other provisions of the GTAA. (Id.)  The APA clearly states that Expedia will not purchase, use, or register any domain names, keywords, or search terms that are identical or confusingly similar to or contain any of the American Marks, which include the AAdvantage Marks.  (Id.)

### C.     Expedia's Breach of the GTAA and Agency Program Agreement, and Infringement of the AAdvantage Marks.

Expedia is an online travel agent which promotes and sells airline tickets, hotel bookings, and rental car reservations.  As authorized by the GTAA and APA, Expedia promotes and sells tickets for American flights.  Expedia also promotes and sells tickets for flights with American's direct competitors.  These competing travel services are often marketed and promoted with other Expedia products, such as hotels, in order to provide the consumer with the additional products the consumer may need for their travel needs.

In June, American became aware of Expedia using the phrase "Add-On Advantage" in a television advertisement.  (Blaise-Shamai Decl., Ex. 1, ¶ 16.)   This shocked American because Expedia is intimately familiar with American's AAdvantage Marks, and because the term "Add-

On Advantage" is so similar to American's "AAdvantage." Upon further investigation, American learned that Expedia filed two U.S. Trademark Applications for logo variations of "Add-On Advantage":



(Blaise-Shamai Decl., Ex. 1, ¶ 16.) In each of these trademark applications, Expedia declared that it intended to use "Add-On Advantage" in the *same* international classifications – Classes 39 and 43 – as the AAdvantage Marks. (Blaise-Shamai Decl., Ex. 1, ¶ 16; Freidman Declaration, Ex. 3.) American also discovered that Expedia had been using the phrase "Add-On Advantage" in press releases, on its website, and on social media, in addition to the television advertising. (Blaise-Shamai Decl., Ex. 1, ¶ 23-25.) Expedia is using "Add-On Advantage" to market a discount "bundling" program, where consumers save by purchasing additional services (i.e., hotel rooms) in addition to their flights. (Id.) Expedia is using the "Add-On Advantage" marks in both plain text and logo form. (Id.)

Expedia prominently features the Add-On Advantage Marks on its website, as shown below:

Read on for some of Expedia's insider travel hacks for 2018:

1. **Our top tip: Use Expedia's Add-On Advantage**
2. **4 tips to save on airfare and hotel costs**
3. **3 tips on how to book a flight**

---

**How to save money with the Expedia Add-On Advantage**

You can get discounted hotel rates when you add on to your existing trip. It's called Add-On Advantage, and it's exclusively for Expedia travelers. Begin by shopping for your flight tickets, rental car, activity or vacation package on Expedia.com. After you book, you'll instantly **unlock savings up to 43% off select hotels until the day of your trip**—giving you time to find just the right hotel.

(https://viewfinder.expedia.com/tips-trends/7-ways-to-save-money-on-travel/, last accessed 11/13/2018, emphasis added.) Expedia uses the "logo" form of "Add-On Advantage" on its website, including the "stacked" form that puts the "A" in "Add On" right next to the "A" in "Advantage" – similar to American's AAdvantage Marks:




10



 

**Book** a flight, car or package

**Unlock** up to 43% off select hotels*

▶ See how it works

(Blaise-Shamai Decl., Ex. 1, ¶ 23.) Expedia is incorporating the oral phrase "Add-On Advantage" and the text-only phrases "Add-On Advantage" and "#AddOnAdvantage!" in its television and internet advertising campaigns. (Blaise-Shamai Decl., Ex. 1, ¶¶ 23-25.)

### III.    AMERICAN IS ENTITLED TO A PRELIMINARY INJUNCTION

In light of Expedia's breaches of the GTAA and APA and infringement of the AAdvantage Marks, and the irreparable injury American will suffer unless Expedia ceases promotion and use of its confusingly similar marks, American is entitled to a preliminary injunction to restore the status and prevent further injury to American, pending a trial on the merits.

#### A.    Legal Standards for Preliminary Injunctive Relief

A party seeking a preliminary injunction must show (1) a substantial likelihood that they will prevail on the merits; (2) a substantial threat that plaintiffs will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the plaintiff outweighs the threatened harm the injunction may do to the defendant; and (4) that granting the preliminary injunction will not disserve the public interest. *See Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.,* 710 F.3d 579, 582 (5th Cir. 2013).

First, American has a strong likelihood of success on the merits of its breach of contract and trademark infringement claims. As discussed below, Expedia's use and application to register the Add-On Advantage Marks (1) harms American's goodwill in its AAdvantage Marks by diluting the field of "Advantage" marks and (2) is likely to cause confusion with the AAdvantage Marks. Here, Expedia provides closely related, if not identical, services in the field of travel in association with the Add-On Advantage Marks, which is likely to cause confusion in the marketplace.

Secondly and thirdly, American faces substantial irreparable harm from Expedia's unauthorized and uncontrolled use of the Add-On Advantage Marks. This immediate, inevitable, and irreparable injury overshadows any inconvenience that Expedia may experience from the entry of a preliminary injunction. Expedia launched its mark only recently, and the harm to American can be limited by minor modifications, such as eliminating the term "advantage" from the Add-On Advantage Marks.

Finally, an injunction serves the public interest because it is necessary to protect the public from deception and confusion. Accordingly, this Court should enter a preliminary injunction to prevent further irreparable harm to American through diminution of the strength of its trademark rights.

### B. American is Likely to Succeed on Its Breach of Contract and Federal Trademark Claims

#### 1. Breach of Contract

Expedia's breach of the various contractual provisions discussed above is blatant. To prevail on its breach of contract claim, American must demonstrate: (1) the existence of a valid contract; (2) the plaintiff's performance or tendered performance; (3) the defendant's breach of the agreement; and (4) damages to plaintiff as a result of the breach. *See Terex Corp. v. Cubex,*

*Ltd.*, 06-cv-1639, 2006 U.S. Dist. LEXIS 88863, at *10 (N.D. Tex. Dec. 7, 2006). Here, American is likely to succeed on its breach of contract claim because all four elements are satisfied.

Specifically, American has established that Expedia and American are parties to the APA, which is a valid and enforceable contract, providing, among other things, that Expedia is bound by certain provisions of the GTAA, including its intellectual property provisions. (Garner Decl., Ex. 1, ¶¶ 5-11.) As American and Expedia have been operating under this contract for many years, there can be no dispute that American has performed its obligations under both the APA and GTAA.

Expedia has materially breached the APA and the GTAA. First, simply by using the Add-On Advantage Marks, Expedia has harmed the "American Marks" (which include the AAdvantage Marks) by diluting the field of "Advantage-formative" marks in the travel field, particularly in the overlapping field of purchasing airfare, hotels, and associated benefits. The very existence of Expedia's Add-On Advantage Marks hurts American's ability to enforce its valuable AAdvantage Marks. Further, when arguing to retain the Add-On Advantage Mark, Expedia questioned whether American can protect the AAdvantage Mark, breaching its promise never to challenge American's ownership of or in any way contest or deny the validity of AAdvantage. (Garner Decl., Ex. 1, ¶ 19.) In addition, Expedia has breached both the APA and GTAA by using the Add-On Advantage Marks in the advertisement, promotion, distribution, and sale of its travel-related goods and services, and is using and registering keywords or search terms incorporating the Add-On Advantage Marks, all of which is creating a likelihood of confusion and causing irreparable harm to American. Finally, American has been harmed by

Expedia's breaches by causing damage to the AAdvantage Marks, and the associated goodwill, as discussed above.

### 2.      Trademark Infringement

Section 32(1) of the Lanham Act makes it unlawful to use a "reproduction, counterfeit, copy, or colorable imitation" of a registered mark in such a way as "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C.  § 1114(1).   Similarly, Section 43(a) of the Lanham Act prohibits the use of a mark that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C.  § 1125(a).  To establish trademark infringement, American must show (1) ownership of a valid, protectable trademark, and (2) a likelihood of confusion caused by the defendant's use of its mark.  *See Equibrand Corp.  v.  Reinsman Equestrian Prods.*, 2007 U.S. Dist.  LEXIS 36229, at *12 (N.D.  Tex.  May 17, 2007).

### a.      The AAdvantage Marks are valid and protectable marks.

The AAdvantage Marks are valid and protectable marks.   The marks are valid as evidenced by American's ownership of the AAdvantage Mark registrations.  (Berg Decl., Ex. 3.) Under federal law, a federal trademark registration "shall be *prima facie* evidence of the validity of the registered mark . . . and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods and services specified in the registration."  15 U.S.C.  §1115(a).  Thus, American's federal trademark registrations for the AAdvantage Marks constitute *prima facie* evidence of American's rights in those marks.  As stated in the AAdvantage Marks registrations, American has used the AAdvantage Marks continuously in interstate commerce since as early as 1981 for its loyalty award program.

The AAdvantage Marks are inherently distinctive and therefore are entitled to a wide scope of protection.  Indeed, "AAdvantage" is an arbitrary mark that does not suggest or describe any ingredient, quality, or characteristic of American's services.  *See* 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §11:11 (4th ed.) ("Arbitrary marks comprise those words, symbols, pictures, etc., that are in common linguistic use but which, when used with the goods or services in issue, neither suggest nor describe any ingredient, quality or characteristic of those goods or services."); *see also Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*, 2013 WL 6839815, at *6 (N.D. Ill. Dec. 27, 2013) ("'American Eagle,' the most salient part of the mark, is an arbitrary mark because 'it neither describes nor suggests [AE Outfitters'] product or service . . . .'").  Rather, the AAdvantage Marks identify American as the source of its loyalty programs, discount programs, incentive award programs, transportation services, and travel-related goods and services.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (noting that arbitrary marks, "because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection").

Additionally, American has acquired an even broader scope of rights in the AAdvantage Marks under common law through its use of the AAdvantage Marks in association with a variety of services beyond those expressly listed in the AAdvantage Mark Registrations.  The Lanham Act defines "use" as "bona fide use of a mark in the ordinary course of trade."  15 U.S.C. § 1127.  American began using the AAdvantage Marks in interstate commerce in association with travel services in 1981 and has used the AAdvantage Marks continuously since that date, expanding to a variety of travel-related services.  As a result of such use, American has acquired exclusive and enforceable rights in the AAdvantage Marks under common law in association

with loyalty programs, discount programs, incentive award programs, transportation services, and travel-related goods and services.

### b. Expedia's use of the infringing Add-On Advantage Marks is likely to cause confusion.

Expedia's use of the Infringing Add-On Advantage Marks in connection with travel-related services is likely to cause confusion among the relevant class of consumers. Courts assess seven factors to determine whether a likelihood of confusion exists: (1) the strength of the plaintiff's trademark, (2) mark similarity, (3) product similarity, (4) outlet and purchaser identity, (5) advertising media similarity, (6) defendant's intent, (7) actual confusion, and (8) care exercised by potential purchasers. *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 339 (5th Cir. 2008). No single factor is dispositive, nor is a majority of factors required. *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664 (5th Cir. 2000).

#### (i) Strength of the American's marks

The first factor requires the Court to weigh the strength and distinctiveness of the AAdvantage Marks. *See Dallas Cowboys Football Club, Ltd., v. Am.'s Team Props.*, 616 F. Supp. 2d 622, 637 (N.D. Tex. 2009). Generally, the stronger the mark, the greater the likelihood that consumers will be confused by competing uses of the mark. *Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co*, 438 F. Supp. 2d 653, (E.D. La. 2006) (finding that the Louisiana State University's colors, schemes, logos and designs are extremely strong marks due to the decades of use and have acquired secondary meaning).

The AAdvantage Marks are strong marks. These marks have been used and extensively promoted for almost 40 years. American has invested substantial time, effort, and expense in advertising and promoting its services provided under the AAdvantage Marks throughout the United States, and abroad. The AAdvantage Marks are used throughout American's marketing

and promotion for its services, including television, radio, newspapers, magazines, and direct mail, across the country and the world. (Blaise-Shamai Decl., Ex. 2, ¶¶ 6-15.) As a result, the AAdvantage Marks have become an extremely valuable asset of American. As of December 31, 2017, there were approximately 927.5 *billion* outstanding award miles in American's AAdvantage program. (Blaise-Shamai Decl., Ex. 2, ¶ 11.) Because the AAdvantage Marks are arbitrary, and because American's extensive use of the AAdvantage Marks has reinforced that loyalty programs, discount programs, incentive award programs, transportation services, and travel-related goods and services offered under the AAdvantage Marks originate from a single source – American – this factor *strongly* favors American.

*(ii)      Similarity of the marks*

The test for confusing similarity is whether the marks are "sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated" *Equibrand Corp. v. Reinsman Equestrian Prods.*, 07-cv-0536, 2007 U.S. Dist. LEXIS 36229, at *32-33 (N.D. Tex. May 17, 2007). The degree of similarity between marks "is determined by comparing the marks' appearance, sound, and meaning." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998)). "When comparing marks, it is the overall impression that counts, rather than simply comparing individual features of the marks. Of course, few would be stupid enough to make exact copies of another's mark or symbol. It has been well said that the most successful form of copying is to employ enough points of similarity to confuse the public with enough points of difference to confuse the courts." *Dallas Cowboys*, 616 F. Supp. 2d at 638 (citations and quotations omitted). As shown below, the AAdvantage and Add-On Advantage marks are strikingly similar in overall visual appearance and commercial impression:

AAdvantage            Add-On Advantage

17

| AAdvantage | Add-On Advantage |
|---|---|

Both marks begin with the letter "A" and end with "advantage." Moreover, when the AAdvantage Marks are compared with the "stacked" logo version of the Add-On Advantage Mark, both share a "double A," the term "advantage," and an image that is evocative of an airplane. In addition, the term "Add On" in Expedia's mark is descriptive of its "bundling services" where customers can save by "adding on" to their existing reservations. That the term "Add On" is descriptive is supported by the USPTO's recent Office Actions issued in connection with Expedia's two trademark applications for the Add-On Advantage Marks, requiring a disclaimer of the term "Add On." (Berg Decl., Ex. 3.) Thus, the remaining "distinctive" portion of Expedia's Add-On Advantage Mark is the shared term "advantage." This is the dominant, relevant portion of the mark, and as a result, this factor weighs strongly in favor of a likelihood of confusion.

> (iii)    *American and Expedia provide closely-related services.*

The more similar the parties' services, the more likely that infringement will be found. *See Exxon Corp. v. Texas Motor Exch.,* 628 F.2d. 500, 505 (5th Cir. 1980). Here, American and Expedia provide closely-related services because they both offer flight, car, and hotel bookings via the Internet under their respective marks. In fact, American's and Expedia's services go far beyond simply selling tickets to flights – both sell tickets on *American* flights, both allow consumers to bundle hotels and car rentals with American flights, and both provide discounts to customers for using their respective services.

Expedia's trademark applications even use the same language, when describing Expedia's services, as American's trademark registrations. For example, American's U.S. Reg.

No. 4897372 for AAdvantage recites "providing travel agency services, namely, providing travel reservation services, namely, coordinating travel arrangements for individuals" in Class 39 and "providing hotel accommodation reservation services for others and providing restaurant reservation services for others" in Class 43. Expedia's Add-On Advantage applications cover "travel services"; "travel agency services"; "travel agency services, namely, making reservations and bookings for transportation" in Class 39, and "travel agency services" and "travel agency services, namely, making reservations and bookings for hotels and other temporary accommodations" in Class 43.

This factor weighs strongly in favor of American.

### (iv)    Outlet and purchaser identity

The fourth factor considers the outlet and purchaser identity. *See Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 211, 229 (5th Cir. 2009). Both American and Expedia provide their respective products and services to the same consumers – potential travelers – via the Internet. Because Expedia sells tickets for American flights, customers are able to purchase the *exact same products*. This factor weighs strongly in favor of a likelihood of confusion.

### (v)    Advertising and media similarity

"The greater the similarity in the [advertising] campaigns, the greater the likelihood of confusion." *See Exxon Corp.*, 628 F.2d 506. Here both American and Expedia market their respective products using a variety of media, including television, radio, newspapers, magazines, direct mail, online, and in social media, across the country. Thus, the parties use similar advertising and marketing channels, and this factor therefore favors American.

### (vi)    Expedia's intent

Intent to deceive is not required for a finding of likelihood of confusion, but where present, it strongly weighs in favor of a likelihood of confusion. *See Streamline Prod. Sys. v.*

*Streamline Mfg.,* No. 16-20046, 2017 U.S. App. LEXIS 6496, *25 (5th Cir. 2017). Here, Expedia's intent can be reasonably inferred from the its longstanding awareness of the AAdvantage Marks, including through direct contracts with American that expressly identify the AAdvantage Marks and prohibit Expedia from harming them. Intent can also be inferred from the similarities between the Add-On Advantage Marks and the AAdvantage Marks. *See Vogue Tyre & Rubber Co. v. Rivas,* 17-cv-3198, 2018 U.S. Dist. LEXIS 136293 at *12 (N.D. Tex., July 18, 2018) (inferring intent to trade off profit off the goodwill associated with Plaintiff's marks in light of Defendant's awareness of Plaintiff's mark together with similarity of design) (citing *Exxon Corp. v. Tex. Motor Exch. of Houston, Inc.*, 628 F.2d 500, 506 (5th Cir. 1980); *Elvis Presley Enters.,* 141 F.3d at 203)). Expedia chose the Add-On Advantage marks despite being under a contractual obligation not to take any action which was confusingly similar to or otherwise could harm the AAdvantage Marks. (Garner Decl., Ex. 1, ¶¶ 5-11.) And when American immediately objected to Expedia's Add-On Advantage Marks, Expedia claimed that American's AAdvantage Marks were unworthy of protection despite having already agreed not to challenge them. (Garner Decl., Ex. 1, ¶ 19.) Expedia therefore moved forward with registering and vigorously promoting the Add-On Advantage Marks despite its actual knowledge of its contractual and other obligations relating to the AAdvantage Marks. In fact, the breadth and reach of Expedia's marketing campaign indicates that Expedia's goal was to increase its customer base by reaching out to those who book trips through other means – including American's customers that book directly with American. Expedia appears to have made a conscious, deliberate decision to build a marketing campaign around a mark confusingly similar to the AAdvantage Marks. As a result, this factor weighs strongly in favor of a likelihood of confusion.

### (vii)    *Actual confusion*

"Actual confusion need not be proven." *See Xtended Beauty, Inc.*, 576 F.3d at 229.  In light of Expedia's actions in broadly promoting the infringing Add-On Advantage Marks across various forms of media in recent weeks, American does not yet understand the full impact of Expedia's actions in the marketplace.  Because consumers book travel in advance, sometimes many months in advance, evidence of actual confusion is not necessarily immediately available. Consumers who are disappointed in services they "bundled" through Expedia thinking that it was affiliated with American's AAdvantage program may not have taken their trips yet, may not have reviewed their AAdvantage statements, and may not ever realize they were misled. Accordingly, American reserves the right to supplement its proof of actual confusion as such information becomes available.  In any event, this factor is at present neutral in the likelihood-of-confusion analysis.

### (viii)    *Degree of consumer care*

Consumers purchasing airline tickets may exercise some care in selecting the time, date, and price of a flight, but are less likely to carefully assess bundled services.  Indeed, the multitude of available choices, coupled with the lack of "apples-to-apples" comparisons, makes comparison shopping difficult and is the reason why so many travel sites exist in the first place. Accordingly, consumers are likely to be focused on the "bottom line" of their trip—its price— and other important factors, such as scheduling.  Travelers are less likely to invest time and effort in assessing whether Expedia's Add-On Advantage program is affiliated with American's AAdvantage program.   Indeed, the ease with which consumers may simply assume an association between the two is likely why Expedia chose Add-On Advantage for its new program and advertising campaign, instead of readily available alternatives that would have been clearly distinct from the AAdvantage Marks.

Accordingly, all factors weigh in favor of American or (in the case of actual confusion) are neutral.

### C.    There is No Adequate Remedy at Law and American is Likely to Suffer Irreparable Harm in the Absence of Preliminary Injunctive Relief.

Fundamentally, American has no control over the hotels, car rentals, or other services Expedia bundles using the Add-On Advantage Marks.  Control is a fundamental principal of trademark rights.  American has a degree of control over the companies that American partners with to provide services or discounts to AAdvantage members.  This control may take the form of preferred pricing and special privileges for AAdvantage members.  American also exercises control over the quality of the services these companies provide to AAdvantage members, to protect the value of its brand.  If an AAdvantage member is unhappy with a related service, such as a hotel room booked through the AAdvantage program, she has an additional recourse by bringing her complaints to American.

But American has no control over the companies Expedia might bundle under its confusing Add-On Advantage Marks.  Indeed, customer complaints concerning products offered through Expedia, such as hotel bookings, are common:



A consumer who booked this hotel, or one of similar quality, through Expedia's Add-On Advantage program, might mistakenly associate this hotel with American's AAdvantage

program. The damage to American's AAdvantage brand would be incalculable. This kind of reputational damage would be impossible to remedy through means other than an injunction.

Expedia cannot credibly dispute that its actions threaten to irreparably harm American, or that American has no adequate remedy at law. In fact, Expedia is prohibited under the GTAA and APA from disputing that monetary damages are an inadequate remedy:

> any breach of the obligations set out in these instructions or the Agreement by Agent could cause irreparable injury and that monetary damages would not be an adequate remedy for such breach. In the event of a breach or threatened breach of any of the provisions of these instructions or the Agreement, American will, to the extent permitted under applicable law, be entitled to seek injunctive relief in any court of competent jurisdiction restraining [Expedia] from breaching the terms hereof without requirement of a bond or notice and [Expedia] agrees not to object or defend against such action on the basis that monetary damages would provide an adequate remedy.

(Garner Decl., Ex. 1, ¶¶ 5-11.) Accordingly, there should be no dispute that Expedia's actions threaten irreparable harm to American and that American has no adequate remedy at law.

###### D.    The Balancing of Harms Weighs in Favor of American.

American has and will continue to invest substantial time and resources in the development of its brand and reputation, including through the AAdvantage Marks. *See Equibrand Corp. v. Reinsman Equestrian Prods.*, 07-cv-0536, 2007 U.S. Dist. LEXIS 36229, at *49 (N.D. Tex. May 17, 2007). However, Expedia's use of the Add-On Advantage Marks damages the valuable goodwill American has developed in the AAdvantage Marks. A consumer who bundles a flight and hotel via Expedia, falsely believing Expedia's bundles to be associated with American's AAdvantage program, will think less of the AAdvantage brand if she finds out later that she could have gotten the hotel cheaper elsewhere. Similarly, a customer who falsely believes that Expedia's bundles are associated with the AAdvantage program are likely to think less of the AAdvantage brand if they are unhappy with their hotel experiences. Critically, American has no way to remedy problems that these unhappy consumers may encounter.

23

The substantial and irreparable harm that American will suffer due to this loss of control outweighs any harm that Expedia may suffer if it has to suspend its use of "Add-On Advantage." Expedia just began using the infringing marks, and it did so with full knowledge and awareness of American's AAdvantage Marks. Any hardship Expedia may suffer is entitled to little weight, because Expedia clearly chose "to incur costs in the face of a possible infringement claim." *ADT, LLC v. Capital Connect, Inc.,* 145 F. Supp. 3d 671, 700 (N.D. Tex. 2015) (holding that defendant's reputational damage was of its own doing and therefore entitled to less weight). Indeed, Expedia has already begun to advertise these benefits as simply "Add On" without any reference to the confusingly similar "Add-On Advantage". Expedia's motivation is to sell one of the numerous travel options in its quiver. Expedia does not own an airline, a hotel chain, or any other actual supplier product. If one travel option loses its appeal to that customer, the customer simply purchases another Expedia product listed on its website to Expedia's benefit.

> **E. Issuance of a Preliminary Injunction is in the Public Interest.**

Finally, an injunction serves the public interest because it will prevent a likelihood of consumer confusion. Consumers are likely to be under the false impression that Expedia's products and services emanate or originate from American, and/or that American has approved, sponsored, or otherwise associated itself with Expedia. Consumers may incorrectly assume that the discounted "bundles" Expedia offers are part of the AAdvantage program. An injunction serves the public interest in this case because "the public has an interest in preventing confusion about the origin of the products that it buys." *Equibrand Corp. v. Reinsman Equestrian Prods.,* 07-cv-0536, 2007 U.S. Dist. LEXIS 36229, *50 (N.D. Tex. May 17, 2007).

The public has the right to purchase products and services in the marketplace without confusion or deception as to the source of such products or services or the identity of the owner of trademarks connected to them. Unless Expedia's continuing use of the Add-On Advantage

24

## IV. CONCLUSION

Expedia's continuing use of the Add-On Advantage Marks irreparably harms American's business, its brand, and its valuable goodwill in the AAdvantage Marks. Without entry of the requested preliminary injunctive relief, Expedia's activities will continue to lead prospective purchasers and others to believe that Expedia's services originate or emanate from or are somehow endorsed, sponsored, or approved by American, which they are not. Further, American has no adequate remedy at law for Expedia's infringement of the AAdvantage Marks, as Expedia has acknowledged in its contracts with American.

For the foregoing reasons, American respectfully requests that this Court grant its Motion for Preliminary Injunction.

Dated: November 15, 2018

Respectfully submitted,

Dee J. Kelly, Jr.
State Bar No. 11217250
Lars L. Berg
State Bar No. 00787072
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Tel.: (817) 332-2500
Fax: (817) 878-9280
dee.kelly@kellyhart.com
lars.berg@kellyhart.com

R. Paul Yetter
State Bar. No. 22154200
Robert K. Ellis
State Bar No. 24076367
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
Tel: (713) 632-8000
Fax: (713) 632-8002
pyetter@yettercoleman.com
rellis@yettercoleman.com

25

Nathan J. Muyskens, Esq.
*Pro Hac Vice* Admission to be Sought
GREENBERG TRAURIG, LLP
2101 L St. NW, Suite 1000
Washington, DC 20037
Tel: (202) 331-3164
Fax: (202) 261-0134
muyskensn@gtlaw.com

**ATTORNEYS FOR PLAINTIFF
AMERICAN AIRLINES, INC.**

### CERTIFICATE OF SERVICE

I certify that on the 15th day of November, 2018, a true copy of the foregoing was served upon all counsel of record via the Court's CMECF system.

Lars L. Berg

CHI 69702365v4